UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY KENNESON and CONRAD MEMBRINO,<br><br>    *Plaintiffs*,<br><br>        *v.*<br><br>MATTHEW VACCARELLI, JAMES O'SULLIVAN, SHAELYN BARON, JOSEPH D'AMATO, and DONALD ROBINSON,<br><br>    *Defendants*. | Civil No. 3:20-cv-01482 (JBA)<br><br>July 7, 2022 |

**RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiffs Kimberly Kenneson and Conrad Membrino bring two counts of malicious prosecution under 42 U.S.C. § 1983 and the Fourth Amendment against two sets of defendants: (1) Defendants Matthew Vaccarelli, James O'Sullivan, and Shaelyn Barone ("Probate Defendants"); and (2) Defendants Joseph D'Amato and Donald Robinson ("Police Defendants"). Each set of Defendants now moves for summary judgment on each count and have filed separate briefs. (*See* Probate Defs.' Mem. of L. in Supp. of Their Mot. for Summ. J. ("Probate Defs.' Mem.") [Doc. # 39-1]; Defs. Donald Robinson and Joseph D'Amato's Mem. of L. in Supp. of Mot. for Summ. J. ("Police Defs.' Mem.") [Doc. # 40-1]. Plaintiffs oppose each motion. (*See* Pls.' Opp'n to Probate Defs. [Doc. # 48]; Pls.' Opp'n to Police Defs. [Doc. # 49].) For the reasons to follow, the Court GRANTS both motions for summary judgment.

**I.    Undisputed Facts**

This matter concerns Plaintiffs Kenneson and Membrino's arrests by Police Defendants after an incident involving Plaintiffs and Probate Defendants in the Waterbury probate court building lobby. Membrino's involvement with the Waterbury probate court began on January 13, 2012, when conservatorship proceedings commenced on behalf of his

mother. (Probate Defs.' Loc. R. 56(a) Stmt. ("Probate Defs.' Stmt.") [Doc. # 39-2] ¶¶ 1-2.) During a hearing held on November 19, 2012, Judge Brunnock, the probate judge presiding over the conservatorship proceedings, called the police as a result of what he perceived as threatening behavior from Membrino. (*Id.* ¶¶4-5.) After Membrino's mother passed away in September of 2014, the matter remained open for the approval of final accounting. (*Id.* ¶ 9.)

Defendant Judge Matthew Vaccarelli, elected to serve as a judge for the Waterbury probate court, did not preside over the Membrino matter because he had witnessed a signature from Plaintiff Membrino's mother and consulted with her attorney about discovery in the matter when he was an attorney in private practice. (*Id.* ¶¶ 26-28.) Judge Vaccarelli did not know Membrino personally, but he had interacted with Plaintiff Kemberly Kenneson (Membrino's retained investigator) on a number of occasions. (*Id.* ¶¶ 19-21.) Kennson and Membrino also attended a seminar conducted by Judge Vaccarelli, during which Plaintiff Kenneson asked a question about whether probate court files are public and Judge Vaccarelli answered affirmatively. (*Id.* ¶¶ 41-47.)

Judge Vaccarelli had at least some familiarity with Membrino's prior dealings with the probate court as well. While discussing court security, Judge Brunnock told Judge Vaccarelli about the November 2012 hearing incident. (*Id.* ¶ 29.) He told Judge Vaccarelli that Membrino had become so upset by the proceedings that Membrino had to be restrained by his attorney twice to prevent him from charging at Judge Brunnock. (*Id.*) The police were called, and Judge Brunnock expressed his regret not pressing charges at the time. (*Id.*) Judge Brunnock also encouraged Judge Vaccarelli to call the police whenever someone was acting aggressively, stating his opinion that the police were best equipped to decide what to do and how to subdue someone, rather than getting involved or having staff get involved. (*Id.* ¶ 29-30.)

In addition to Judge Brunnock's advice, Judge Vaccarelli also received training regarding the probate court's security policy. (App'x Probate Defs.' Stmt. at DA033.) The court's policy states that "[j]udges are responsible for working with their courts' host municipalities, with support from [court administration], to implement best practices for security at the courts and to promote appropriate overall security measures in the buildings in which the courts are located." (Probate Defs.' Stmt. ¶ 32; App'x Probate Defs.' Stmt. at DA063.) This policy is especially important for the Waterbury probate court which has no security personnel on site and is located in a privately owned commercial building that houses other businesses. (Probate Defs.' Stmt. ¶¶ 35, 37.)

On July 6, 2018, Membrino entered the public lobby of the Waterbury probate court and asked Defendant Shaelyn Barone, the receptionist, for permission to review the files pertaining to his mother's conservatorship matter. (*Id.* ¶¶ 48-49.) Barone gave Membrino the files and informed him that he could pay for copies. (*Id.* ¶ 51.) Shortly thereafter, Kenneson joined Membrino. (*Id.* ¶ 55.) Then, Barone says she observed what she believed was Kenneson taking photos of documents with her phone, in violation of the court's cell phone use policy.[1] (*Id.* ¶ 56.) Barone informed Defendant James O'Sullivan, another member of court staff, what she had observed. (*Id.* ¶ 57.) O'Sullivan told Plaintiffs that they were not allowed to take pictures of files and took the file from them. (*Id.* ¶ 58.) Then the parties engaged in a verbal altercation, in which Membrino admits he became very excitable and had a "short outburst." (Membrino Dep. [Doc. # 40-4] at 73.) Membrino told O'Sullivan that he wanted to talk to a supervisor because "[t]hese are my mother's files and I have a right to see

---

[1] Plaintiffs dispute that they took photos of the files, (Kenneson Dep. Part 2 [Doc. # 51]at 126-27), but that dispute is immaterial to Barone's testimony that she believed Plaintiffs were engaging in that activity. Kenneson admits that she may have been using her cell phone for the purpose of sending or receiving a text message, testimony that is not inconsistent with Barone's perception that she was taking photos with the cell phone. (*Id.* at 130-31.)

them. Judge Vaccarelli told us they were public files" and that "you took the file from me unwarranted. I'm allowed to see it. It's public information. I would like it back." (Probate Defs.' Stmt. ¶¶ 64-65.) Kenneson stood by Membrino while he was insisting that the file be returned to him. She told Membrino: "Conrad, Conrad just relax . . . I know the Judge, he's a friend of mine, the Judge will come out. He'll make sure this is okay. Everything is okay and we'll get the file back." (*Id.* ¶ 69.)

At some point, hearing the disturbance, Judge Vaccarelli, who had been in his chambers near the rear of the building, approximately forty feet away, approached the lobby to find out what was happening. (*Id.* ¶ 73.) Barone and O'Sullivan explained to Judge Vaccarelli their understanding of the events. Judge Vaccarelli testified by declaration that, after he considered what he had learned from his staff and his prior knowledge of Plaintiff Membrino's behavior with Judge Brunnock, he instructed O'Sullivan to call the police. (*Id.* ¶ 76.) O'Sullivan did as he was instructed, and informed Plaintiffs that the police had been called. (*Id.* ¶ 78.)

Defendants Officer Joseph D'Amato and Sergeant Donald Robinson arrived thereafter and interviewed the parties about what had transpired before their arrival. (Police Defs.' Stmt. [Doc. # 40-2] ¶¶ 28-30, 47.) O'Sullivan explained to Police Defendants that Plaintiffs had violated the court's cell phone usage policy and directed their anger at him when he took the probate file from them. (*Id.* ¶¶ 54-58.) He also stated that the argument escalated, alerting Judge Vaccarelli. (*Id.* ¶ 59.) Judge Vaccarelli told Police Defendants what had caused him to investigate the disturbance, what he had been told about Plaintiff Membrino's history with the Waterbury probate court, his observations of Plaintiff Kenneson's behavior, and the probate court's policy about cell phone usage. (Probate Defs.' Stmt. ¶ 84.) Judge Vaccarelli asked Police Defendants to arrest Plaintiffs due to their behavior. (*Id.* ¶ 85.) Police Defendants then arrested Plaintiffs, believing that there was probable cause to charge them

with breach of the peace in the second degree for engaging in tumultuous behavior in violation of Connecticut General Statute § 53a-181.[2] (Police Defs.' Stmt. ¶ 67.)

After processing, Membrino was released after posting $1,000 bond and Kenneson was released on a promise to appear. (Probate Defs.' Stmt. ¶ 90.) At Membrino's initial appearance, the state offered to nolle the case in exchange for a charitable contribution of $250, which Membrino had paid prior to that appearance. (*Id.* ¶92.) Upon inquiry by Membrino's attorney, the State agreed that Membrino was entitled to dismissal but did not take a position with respect to probable cause, stating "[t]he state was nolling it. [Membrino] has a right to ask for dismissal. It is up to the court do to dismiss it or not. I think he has a right to it and he did make the charitable contribution." (*Id.* ¶ 93.) At her arraignment on July 18, 2018, the state offered to allow Kenneson to plead guilty to creating a public disturbance, an infraction, and to pay a $75 fine; she declined to do so and pleaded not guilty. (*Id.* ¶¶ 97-98.) On May 20, 2019, when the case was scheduled for trial, the State moved to nolle the charge, representing that "the state doesn't believe it's going to meet its burden for trial" given that the State's Attorney's investigation revealed that "the party [Ms. Kenneson] was with, was really the major party that was screaming or making a huge scene. They didn't think Ms. Kenneson had a major role in this." (*Id.* ¶ 99.) The court then dismissed the case. (*Id.* ¶ 100.)

## II.   Standard of Review

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wright*

---

[2] Plaintiffs deny this fact because they maintain that they did not engage in this behavior. (*See* Pls.' Stmt. [Doc. # 49-1] ¶ 67 (citing their deposition testimony that Probate Defendants unfairly characterized the situation to the police and that the Police Defendants did not credit their side of the story before making the arrest).)

*v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)).

## III.   Discussion

Section 1983 creates liability for individuals who deprive a person of a federally protected right while acting under the color of state law. 42 U.S.C. § 1983. Plaintiffs invoke § 1983, alleging that Defendants procured malicious prosecutions against them in violation of their Fourth Amendment rights to be free of unreasonable seizures. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242

(2d Cir. 2020). In Connecticut, this means a plaintiff must demonstrate that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; (4) the defendant acted with malice, primarily for a purpose other than that of bringing a suspected offender to justice; and (5) there was a post-arraignment liberty restraint sufficient to implicate the plaintiff's Fourth Amendment rights. *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982); *Murphy v. Lynn*, 118 F.3d 938, 944-46 (2d Cir. 1997). Usually, only arresting and prosecuting state actors are subject to malicious prosecution claims; however, a person who contacts the police, reports the alleged criminal activity, and encourages the prosecution may be held liable as well. *See Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 31-14 (D. Conn. 2002).

Probate Defendants and Police Defendants have filed separately for summary judgment, but they advance overlapping arguments. They argue, among other things,[3] that there is no dispute that Police Defendants had probable cause to arrest Plaintiffs on suspicion of disturbing the peace and therefore Plaintiffs' malicious prosecution claims fail as a matter of law. (*See, e.g.*, Police Defs.' Mem. at 23-24.) Although Plaintiffs oppose each of Defendants' claimed grounds supporting their motions for summary judgment, the Court considers

---

[3] Probate Defendants also argue that (1) they are entitled to absolute immunity based on judicial and quasi-judicial immunity, (2) neither O'Sullivan nor Barone initiated the prosecution against Plaintiffs, (3) there is no evidence that the Probate Defendants had malice towards Plaintiffs, (4) Membrino did not suffer a post-arraignment seizure as a prime facie element of malicious prosecution, and (5) Membrino's proceeding did not terminate in his favor. (Probate Defs.' Mem. at 10, 18.)

Like the Probate Defendants, the Police Defendants argue that Plaintiffs have not demonstrated that the police lacked probable cause to arrest them, that the police acted with malice, that Membrino suffered a post-arraignment deprivation, and that Membrino's proceedings terminated favorably. (Police Defs.' Mem. at 15-16, 18-19.)

whether there is a genuine dispute with respect to probable cause first because "[i]t is axiomatic" that the existence of probable cause provides Defendants with an absolute defense to malicious prosecution. *Ruttkamp v. De Los Reyes*, No. 3:10cv392(SRU), 2012 WL 3596064, at *5 (D. Conn. Aug. 20, 2012) (citing *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002)).

A plaintiff claiming malicious prosecution has the burden of proving the absence of probable cause. *Estrada v. Torres*, 646 F. Supp. 2d 253, 257 (D. Conn. 2009) (citing *Bhatia v. Debek*, 287 Conn. 397, 410-11 (2008)). Probable cause exists "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). Therefore, the Court must assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Under Connecticut law, when a person "[e]ngages in . . . tumultuous or threatening behavior in a public place" and does so with "the intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof" he or she is subject to arrest and prosecution for breach of the peace in the second degree. Conn. Gen. Stat. § 53a-181. Defendants maintain that Probate Defendants' eyewitness accounts of Plaintiffs' loud and disruptive behavior place beyond doubt Police Defendants' probable cause to arrest Plaintiffs pursuant to § 53a-181. (Police Defs.' Mem. at 9-12; Probate Defs.' Mem. at 22-23.)

On this record, Police Defendants had probable cause to arrest Plaintiffs. It is undisputed that Police Defendants interviewed the parties when they arrived. (Police Defs.'

Stmt. [Doc. # 40-2] ¶¶ 28-30, 47.) O'Sullivan explained to Police Defendants that Plaintiffs had violated the probate court's cell phone usage policy and directed their anger at him when he took the probate file from them. (*Id.* ¶ 54-58.) He also stated that the argument escalated and Judge Vaccarelli was alerted by the commotion. (*Id.* ¶ 59.) Moreover, Plaintiffs do not raise a genuine dispute that Judge Vaccarelli relayed to Police Defendants what had caused him to investigate the disturbance, what he had been told about Membrino's history with the Waterbury probate court, his observations of Kenneson's behavior, and what the court's cell phone usage policy prohibited. (Probate Defs.' Stmt. ¶ 84.) While the parties agree that Judge Vaccarelli asked Police Defendants to arrest Plaintiffs due to their behavior, (*id.* ¶ 85), Police Defendants maintain that they arrested Plaintiffs on their belief that the circumstances were sufficient to charge them with breach of the peace in the second degree for engaging in tumultuous behavior in violation of § 53a-181, as reflected in their police report, (Police Defs.' Stmt. ¶ 67). Given the consistent statements made by three witnesses to the incident, the Court agrees that Police Defendants had reasonably trustworthy information sufficient to establish probable cause. *See Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists . . . .") (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).

Resisting this conclusion, Plaintiffs identify a dispute on this element given their claims that neither were creating a disturbance and that Probate Defendants were the ones in violation of the law when they disallowed Plaintiffs to take pictures of probate court files by "violently" retrieving the files and yelling at Plaintiffs. (Pls.' Opp'n to Probate Defs. at 8; Kenneson Dep. Part 2 [Doc. # 51] at 144-47; Membrino Dep. [Doc. # 40-4] at 78-79.) Despite

communicating their version of the facts to Police Defendants, Plaintiffs contend Police Defendants "refused to listen to the plaintiffs' side of the story and refused to consider any exculpatory evidence." (Pls.' Opp'n to Police Defs. at 4.) What's more, they place great weight on Kenneson's testimony that one officer told her that she and Membrino were under arrest at Judge Vaccarelli's behest. (Kenneson Dep. Part 1 [Doc. # 50] at 63-64.)

While circumstances that raise doubt as to the veracity of a witness' statement may surface during a police investigation, *see Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995), none exist on this record. Police Defendants learned from a probate court judge and two members of court staff that Plaintiffs had engaged in behavior consistent with breach of the peace in the second degree. Plaintiffs' deposition testimony that their side of the story contradicted Probate Defendants' claims does not produce a genuine dispute about the existence of probable cause. *See Curley*, 268 F.3d at 70 ("[W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee."); *see also id.* ("Although a better procedure may have been for the officers to investigate [a] plaintiff's version of events more completely, the arresting officer does not have to prove [the] plaintiff's version wrong before arresting him."). Nor does Plaintiffs' claim that the arrests were motivated by Judge Vaccarelli's request negate Police Defendants' probable cause, because the "motivation [of an arresting officer] is not a consideration in assessing probable cause." *Singer*, 63 F.3d at 119.

Because the record does not reveal a genuine dispute with respect to probable cause and Plaintiffs' arguments have failed to persuade the Court otherwise, Plaintiffs cannot defeat Defendants' motions for summary judgment. As such, the Court will grant Defendants'

motions for summary judgment on that basis without opining on their other arguments. *See, e.g.*, *Johnson v. Ford*, 496 F.Supp.2d 209, 214 (D. Conn. 2007) ("Because the court has determined that the Defendants had probable cause for the arrest that initiated the prosecution of the plaintiff, his malicious prosecution claim fails as a matter of law." (citing *McHale*, 187 Conn. at 447)).

**IV.   Conclusion**

For the foregoing reasons, Defendants' motions for summary judgment [Docs. ## 39, 40] are GRANTED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of July 2022

11