UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY KENNESON and CONRAD MEMBRINO, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> MATTHEW VACCARELLI, JAMES O'SULLIVAN, SHAELYN BARON, JOSEPH D'AMATO, and DONALD ROBINSON, <br><br> *Defendants*. | Civil No. 3:20-cv-01482 (JBA) <br><br> July 12, 2023 |

**RULING ON PLAINTIFFS' MOTIONS FOR RECONSIDERATION AND FOR EXTENTION OF TIME TO OBTAIN LEGAL COUNSEL**

Plaintiffs Kimberly Kenneson and Conrad Membrino seek reconsideration [Doc. # 116] ("First Mot. to Recon.") of this Court's order granting summary judgment [Doc. # 68] to (1) Defendants Matthew Vaccarelli, Waterbury Probate Court Judge; James O'Sullivan, Waterbury Court staff attorney; Shaelyn Barone, Waterbury Probate Court receptionist ("Probate Defendants"); and (2) Defendants Joseph D'Amato and Donald Robinson, both police officers with the Waterbury Police ("Police Defendants"). (Mot. for Recon. [Doc. # 118].) Plaintiffs also move for reconsideration of the Court's order [Doc. # 114] ("Second Mot. to Recon.") denying their five motions to supplement and their motions to compel. [Docs. # 85, 86, 93, 94, 100, 103, and 106].) Plaintiffs additionally move for an extension of time to obtain legal counsel, [Doc. # 124]. For the reasons set forth below, Plaintiffs' motions are DENIED.

I.   **Background**

The Court assumes familiarity with the underlying facts and proceedings in this case, but briefly reviews the relevant background. On November 19, 2012, in Waterbury probate

court, Plaintiff Membrino was present for a hearing regarding conservatorship proceedings on his mother's behalf. (Summ. J. at 1-2.) Probate Judge Brunnock, who was presiding over the hearing, called the police based on behavior by Membrino that he perceived as threatening. (*Id.* at 2.) Judge Brunnock relayed this incident to Defendant Probate Judge Matthew Vaccarelli during a conversation with court security, telling him that Plaintiff Membrino had to be physically restrained to prevent him from charging; Judge Brunnock told Defendant Vacarelli that he regretted not pressing charges, and encouraged Defendant Vacarelli to call the police if such a situation ever arose again. (*Id.* at 2.)

On July 6, 2018, Plaintiff Membrino entered Waterbury probate court, joined by Plaintiff Kenneson, and asked Defendant Barone to permit him to review files from his mother's conservatorship matter; once Defendant Barone gave Plaintiff Membrino the files, she believed she observed Plaintiff Kenneson taking photos of the documents in violation of the court's policy, and informed Defendant O'Sullivan, another court staff member. (*Id.* at 3.) A verbal altercation ensued during which Plaintiff Membrino had an "outburst", and Defendant Vacarelli came out of his chambers to see what the disturbance was. (*Id.* at 3-4.) Defendant Vacarelli spoke to Defendants Barone and O'Sullivan and based on these conversations and his prior knowledge from Judge Brunnock, called the police. Defendants Joseph D'Amato and Donald Robinson, both members of the Waterbury police, arrived and arrested Plaintiffs after speaking to Defendant Vacarelli and the other Probate Defendants, believing there was probable cause to charge them with breach of the peace. (*Id.* at 4-5.) The charges against both Plaintiffs were ultimately dismissed. (*Id.* at 5.)

Plaintiffs filed suit bringing two counts of malicious prosecution against Defendants under 42 U.S.C. § 1983 and the Fourth Amendment. (*Id.* at 1.) Both Probate and Police Defendants moved for summary judgment [Docs. # 39, 40] and the Court granted both motions, entering judgment against Plaintiffs on July 19, 2022. (*See* Order Granting Summ. J.

[Doc. # 68].) Plaintiffs moved for reconsideration of the Court's summary judgment order on August 16, 2022 [Doc. # 84] and subsequently filed five motions to supplement the record, and two motions to compel Defendants to produce discovery. The Court denied the motions to supplement because all of the proposed submissions "existed and were available to them or their attorney prior to the grant of summary judgment on July 19, 2022," making them irrelevant for purposes of a reconsideration motion, and denied the motions to compel because the subpoenas were never properly issued and had been applied for in Waterbury Superior court, which meant that the federal court did not have jurisdiction to enforce them. [Doc. # 114]. The Court also denied the motion for reconsideration without prejudice to refile because it exceeded the extended 50-page limit set by the Court by manipulating the margins to allow for more text to fit on each page. (*Id.*) Plaintiffs moved for reconsideration of the Court's order, and also refiled their original motion for reconsideration. Police Defendants opposed both reconsideration motions, and Probate Defendants opposed reconsideration of summary judgment.

## II.   Legal Standard

"The major grounds justifying reconsideration" under both Second Circuit precedent and D. Conn. Loc. R. 7(c) "are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790.) "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made," *Caires v. Adams,* No. 3:17-CV-1993(AWT), 2019 WL 8807865, at *1 (D. Conn. Apr. 23, 2019),[1] nor to "advance new facts, issues or arguments

---

[1] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

not previously presented before the [c]ourt." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). "The standard for granting a motion for reconsideration is strict," *United States v. Morales*, No. 3:94-CR-112 (SRU), 2021 WL 3374608, at *1 (D. Conn. Aug. 3, 2021), and a motion for reconsideration should not be granted "where the moving party seeks solely to relitigate an issue already decided*." Barnett v. Connecticut Light & Power Co.*, 967 F. Supp. 2d 593, 596 (D. Conn. 2013), *aff'd*, 580 F. App'x 30 (2d Cir. 2014).

### III.   Discussion

#### A.   Motion for Reconsideration of Summary Judgment

Plaintiffs ask that the Court reverse the grant of summary judgment because relevant disputes of material fact remained in the record. (*See* First Mot. to Recon.); (Pls.' Mem. in Support of First Mot. for Recon. [Doc. # 120]) ("First Mem.".) Probate Defendants argue that disputing the veracity of Defendants' materials submitted in support of summary judgment (Probate Defs.' Opp'n to First Mot. to Recon. at 9) and arguing that Plaintiffs met all the required elements of a malicious prosecution claim, (*id.* at 10), are simply repetitions of the same arguments made in opposition to summary judgment, not grounds for a reconsideration motion. (*Id.* at 11.) Probate Defendants further argue that Plaintiffs submit no controlling decisions that the Court overlooked, but instead reference cases that the Court either cited explicitly or which provide no basis for reversing the grant of summary judgment. (*Id.* at 12.) Finally, the material Plaintiffs rely on, Probate Defendants contend, is either material already submitted to the Court or available at the time of summary judgment but not submitted, neither of which constitute "data that the court overlooked" or "new evidence." (*Id.* at 13-15.)

There are three elements of a malicious prosecution tort: "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting" the suit was malicious, which was often defined in this context as without probable cause and for a

purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused." *Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022). The Court granted summary judgment to Defendants because the existence of probable cause is an "absolute defense" to malicious prosecution, and "the record [did] not reveal a genuine dispute" that the Police Defendants had probable cause to arrest Plaintiffs for a breach of the peace. (Summ. J. at 8, 10.)

Plaintiffs make two arguments relevant to the existence of probable cause. (First Mot. for Recon. at 16.) First, because both of their criminal cases were dismissed without a stipulation of probable cause, Plaintiffs argue that there was no probable cause for their arrest. (Mot. at 16.) In support, Plaintiffs cite to documents that are already in the record, demonstrating that their arguments are based on documents that were considered by the Court in its ruling, rather than new evidence. There is also no clear error in the Court's summary judgment decision. Under *Thompson,* all three elements of the malicious prosecution test must be met, meaning that if there is no probable cause, it is legally irrelevant whether the prosecution terminated in acquittal or discharge. The fact that Plaintiffs' cases were dismissed would be relevant to the third prong of the test, but does not answer the question of whether or not there is probable cause. Nor does the dismissal of the charges despite Plaintiffs' refusal to stipulate to probable cause constitute any affirmative finding of no probable cause contrary to the Court's holding.

Second, Plaintiffs argue that the Police Defendants were incorrect in believing there was probable cause because the Police Defendants failed to adequately question the witnesses present and because they credited the Probate Defendants over Plaintiffs despite contradictions between Plaintiffs and Probate Defendants' statements. (First Mot. for Recon. at 24-26, 35); (First Mem. at 1.) Once again, this argument was addressed in the summary judgment motion, where the Court explained that there was nothing in the record to suggest

that the Police Defendants had any reason to doubt the statements of "a probate court judge and two members of court staff," and that under *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001), probable cause may exist even though "a better procedure may have been for the officers to investigate [a] plaintiff's version of events more completely" because "the arresting officer does not have to prove [the] plaintiff's version wrong before arresting him." (Summ. J. at 10.)

"Probable cause" is "considered from the perspective of a reasonable police officer in light of his training and experience." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008). Whether probable cause exists depends on the knowledge of the police officers who made the arrest; in other words, why a witness called the police or whether they gave the police incorrect information is not relevant to probable cause if the officer reasonably believed there was probable cause based on the information they *did* have at the time of the arrest. For example, Plaintiffs argue that it was "probate staff" engaging in loud tumultuous behavior, and that a "loud verbal disturbance did not take place between Membrino[,] Kenneson and O'Sullivan." (First Mot. for Recon. at 6); (*see also id.* at 17.)[2] However, what matters for purposes of probable cause is not who caused the disagreement, but whether the Police Defendants reasonably believed upon arriving at the scene that it was Plaintiffs who caused the disturbance based on conversations with the witnesses present. Similarly, even if the police report did not accurately reflect some of the statements Plaintiff Membrino or others made, the Court held at summary judgment that the statements the parties *did* agree on—that Judge Vacarelli relayed what he believed the disturbance was and his past knowledge of Membrino—were the basis of probable cause. (First Mot. for Recon. at 10-11.)

---

[2] Plaintiff Membrino admitted in his deposition that he had an "outburst". The summary judgment order held that "Plaintiffs' deposition testimony that their side of the story contradicted Probate Defendants' claims does not produce a genuine dispute about the existence of probable cause.") (Summ. J. at 10.)

The remaining issues raised by Plaintiffs' brief, listed below, either do not bear on the issue of probable cause or are repetitions of arguments already made and addressed by the Court in its prior rulings:

- The validity of Mrs. Membrino's conservatorship (First Mot. for Recon. at 1-3, 20);
- Why Judge Brunnock called the police on Membrino in 2012 (First Mot. for Recon. at 1, 4);
- What exactly Judge Brunnock told Judge Vacarelli, and whether Judge Vacarelli felt that he had a particular reason to fear Plaintiff Membrino prior to the events underlying the case (First Mot. for Recon. at 17-18);
- Whether it was Defendant O'Sullivan or Judge Vacarelli that called the police (First Mot. for Recon. at 3-6, 9);
- The lack of cameras in the Probate Court (First Mot. for Recon. at 6-7);
- Whether Plaintiff Kenneson was actually taking photos or whether Defendant Barone simply believed she was (First Mot. for Recon at 8-9, 11-15, 18-19);
- Whether there are inconsistencies in the police report regarding non-substantive details (First Mot. for Recon. at 9-12);
- Whether Judge Vacarelli would have absolute or governmental immunity if there was probable cause (First Mot. for Recon. at 20);
- Information from exhibits already in the record, such as Plaintiffs' interrogatories (First Mot. for Recon. at 30.)

The Court finds that Plaintiffs have failed to show that the Court overlooked binding case law or relevant data, and that its original holding that probable cause existed is not clear error. The First Motion to Reconsider is denied.

## B.     Motion for Reconsideration of Order Denying Motions to Supplement and Compel Discovery

Plaintiffs ask that the Court reconsider its order denying their motions to supplement and compel because their motions to supplement were based on the failure of their attorney, rather than any negligence on their part, and because they attempted to enforce the subpoenas in Waterbury criminal court. (*See* Second Mot. to Reconsider); (Pls.' Mem. in Support of Second Mot. to Reconsider ("Second Mem.") [Doc. # 119].) The Probate Defendants note that Plaintiffs did not file the motion for reconsideration of the Court's October 17, 2022 order until October 28, 2022; under D. Conn. Loc. R. 7(c), motions for

reconsideration must be filed within 7 days, and so this motion is untimely. (Probate Defs.' Opp'n to Second Mot. to Reconsider [Doc. # 123] at 7.) However, even if the Court were to reach the merits, Defendants Robinson and D'Amato argue that Plaintiffs have "failed to set forth any data that the court overlooked nor any need to correct a clear error," instead simply repeating the arguments in their original motions and arguing that the motions seek to correct a "clear error by their attorney." (Police Defs.' Second Opp'n [Doc. # 121] at 1.)

Plaintiffs state plainly in the first paragraph of their second reconsideration motion that "most of . . . the documents requested to be added were part of both Plaintiffs exhibits that should have been submitted with their original Affidavits and Interrogatories." (Second Mot. for Recon. at 1.) It was for this reason that the Court denied the motions to supplement in the first instance. As the Court explained in the order denying Plaintiffs' initial motions to supplement, the Court will not consider "new material available to [the moving party] at the time the motion was originally decided." *McGuire v. Inch*, No. 3:19-CV-1846(VLB), 2021 WL 1165278, at *3 (D. Conn. Mar. 26, 2021). Plaintiffs argue that the documents "should be added to the record" because they relate to documents that are "already part of the record," and the documents' absence in the record is because of "error by the Plaintiffs['] Attorney." However, if these records were not submitted because of the Plaintiffs' attorney, it means they are not new, and whether or not Plaintiffs believe they *should* be in the record, they were not properly submitted during the time period for doing so.

Plaintiffs also argue that this is an exception to that rule because the documents are needed to correct a "clear error", (Second Mem. at 9.) However, the requirements of "clear error" and "manifest injustice" in the context of allowing for reconsideration mean that the Plaintiffs must show that the *Court* made a clear error, and that failure to correct it would result in manifest injustice. *See* Edward H. Cooper, § 4478 Law of the Case, 18B Fed. Prac. & Proc. Juris. (Wright & Miller) (3d ed.). A perceived failure by Plaintiffs' attorney may be

frustrating, but "[P]laintiffs are bound by their counsel's decisions and any complaint plaintiffs have against [their attorney], including failure to include [certain materials] in the summary judgment record, is appropriately raised in the Grievance Committee proceeding initiated by plaintiffs that is underway and/or in a civil professional malpractice action for damages," not a motion for reconsideration. *Stone v. Town of Westport*, No. 3:04CV18 (JBA), 2007 WL 108454, at *4 (D. Conn. Jan. 12, 2007).

As for the motions to compel, Plaintiffs state that it is "not true" that they never enforced the subpoenas in Waterbury Criminal Court. However, the Plaintiffs also state that "the judge addressed [the subpoenas] and stated they were not going to be acted on until trial," and that when Plaintiffs' cases were dismissed, "there was no trial" for the evidence that the Plaintiffs sought to be subpoenaed to be used in. (Second Mot. for Recon. at 2.) It appears that Plaintiffs misunderstand this Court's use of the term "enforced." There is no dispute that Plaintiffs requested that the state court issue subpoenas; however, the subpoenas were never issued, meaning that that the state court never *granted* the Plaintiffs' requests and made the subpoenas legally enforceable.

Even if the subpoenas had been issued and were enforceable at some point in the past, subpoenas are meant to be "a carefully circumscribed device to expedite trials and hearings," not "an unlimited tool for discovery and investigation." *United States v. Nix*, 251 F. Supp. 3d 555, 564 (W.D.N.Y. 2017). In other words, a subpoena is a tool to be used for obtaining materials for a particular purpose, like a trial or hearing; a subpoena issued for a state criminal trial cannot be used for a different purpose, like a motion for reconsideration in federal court. Plaintiffs also devote an extensive portion of their second motion for reconsideration to arguing what the evidence would have been, but what the evidence would have shown does not answer the question of whether Plaintiffs followed the correct procedure to obtain it, nor whether this Court—a federal court—has the power to enforce a

subpoena issued by a state court. Now that the state court case that the subpoenas were sought in has been dismissed along with Plaintiffs' criminal cases, those subpoenas are a nullity, and this Court has no power to enforce them.

Plaintiffs' Second Motion for Reconsideration [Doc. # 117] is DENIED.

### C.      Motion for Extension of Time

On November 17, 2022, Plaintiffs also moved for extension of time to obtain legal counsel [Doc. # 124]. In their reply [Doc. # 126] to Police Defendants' opposition to the extension [Doc. # 125], Plaintiffs explained that they have contacted attorneys who have declined to represent them based on the short timeline for making any further filings, and because Plaintiffs do not have the money to pay for an attorney. Plaintiffs have now had many months to obtain legal counsel and have filed nothing on the docket suggesting that these attempts have been fruitful; to the extent they request further time, that request is DENIED.

## IV.   Conclusion

Plaintiffs' motion for an extension of time to obtain legal counsel [Doc. # 124] and Plaintiffs' motions for reconsideration [Docs. # 117, 118] are DENIED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of July, 2023